UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ERNEST V. COUGILL,                          )
                                            )
          Plaintiff,                        )
                                            )
     v.                                     ) CASE NO.: 1:15-cv-0993-SEB-DML
                                            )
CAROLYN W. COLVIN, Acting                   )
Commissioner of the Social Security,        )
Administration,                             )
                                            )
          Defendant.                        )

Report and Recommendation on
Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C.

§ 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its

appropriate disposition.  (Dkt. 9)  As addressed below, the Magistrate Judge

recommends that the District Judge REVERSE AND REMAND the decision of the

Commissioner of the Social Security Administration that plaintiff Ernest V. Cougill

is not disabled.

**Introduction**

Mr. Cougill applied in April 2012 for Supplemental Security Income disability

benefits (SSI) under Title XVI of the Social Security Act, alleging that he has been

disabled since January 1, 2008.  Acting for the Commissioner of the Social Security

Administration following a hearing on November 14, 2013, administrative law judge

Monica LaPolt issued a decision on January 29, 2014, finding Mr. Cougill not

disabled. The Appeals Council denied review of the ALJ's decision on May 8, 2015,

rendering the ALJ's decision for the Commissioner final. Mr. Cougill timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Cougill contends that the ALJ erroneously evaluated the severity of his mental impairments and their effect on his functioning. As explained below, the court determines that the ALJ's decision is not supported by substantial evidence because (1) she did not advise the vocational expert of information material to a step five disability determination and, in fact, made a clear factual error regarding that information; (2) omitted from the RFC, without explanation, functional limitations described in the narrative portion of the opinion of state agency reviewers, although she purported to give great weight to the reviewers' opinion; and (3) even misstated the conclusions made by the same reviewers. In addition to these errors, the ALJ failed to provide a rational explanation why a limitation to simple, repetitive work addresses Mr. Cougill's particular deficits in concentration, persistence, or pace. Accordingly, the Commissioner's decision must be reversed and remanded.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Mr. Cougill is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if

based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 416.945. At the

fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity.  20 C.F.R. § 416.960(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential.  A court must affirm if no error of law occurred and if the findings are supported by substantial evidence.  *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion.  *Id.*  The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the

conclusions he made, and he must trace the path of his reasoning and connect the

evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th

Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I.     The ALJ's Sequential Findings

Mr. Cougill was born in 1986, was 25 years old as of his application date, and

27 years old at the time of the ALJ's decision denying disability benefits.  He has

held some part-time jobs, and most recently has worked at an Applebee's

restaurant.  His job is known as "silver wrapper," meaning he wraps utensils in

napkins, and sometimes he washes dishes.  (R. 56).

At step one, the ALJ determined that Mr. Cougill's work was not at a level

constituting substantial gainful activity.  At step two, she identified as severe

several mental impairments (a learning disorder, borderline intellectual

functioning, adjustment disorder, and attention deficit hyperactivity disorder) and a

physical impairment (neurofibromatosis).  Mr. Cougill has not challenged the ALJ's

evaluation of his physical impairment.  At step three, she determined that the

severity of Mr. Cougill's impairments do not satisfy a listing.  The ALJ next

determined Mr. Cougill's residual functional capacity (RFC) and found that,

mentally, he can perform simple, repetitive work (because of his capacity to

understand, remember, and follow simple instructions) and has the concentration

and attention skills to work with reasonable pace and persistence at work involving

routine, concrete, and tangible tasks.  (R. 14).  She also found that his social

functioning limitations prevent him from "transactional interaction with the public." (*Id.*).  At step four, the ALJ determined that Mr. Cougill had no past relevant work. At step five, the ALJ concluded that with his RFC and vocational profile, and based on the testimony of a vocational expert, Mr. Cougill is capable of the work demands of the following occupations described in the DOT:  Cleaner (DOT #323.687-010); Hand Packer (DOT #920.587-018); and Machine Feeder (DOT #699.686-010).  She determined, based on the VE's testimony, that these jobs exist in significant numbers in the relevant economy and therefore Mr. Cougill is not disabled.

## II.     The ALJ's decision is not supported by substantial evidence.

As the ALJ found, Mr. Cougill's cognitive deficits include a learning disorder and borderline intellectual functioning.  (R. 11).  His full scale-IQ score from two separate tests was 79 (at age 19) and 78 (at age 25).  Mr. Cougill was placed in special education courses during his school years.  Although he attended high school through the 12th grade, he obtained only a certificate of completion and not a diploma.  (R. 7).  Mr. Cougill testified at the hearing that he is working on his GED (General Education Diploma), and the ALJ (as well as the state reviewing psychologists) note this activity as a positive indicator of his abilities.  (*See* R. 12, R. 250).  In fact, the ALJ mentioned Mr. Cougill's work on a GED at least seven times in her decision.  Mr. Cougill's mental impairments also include, as the ALJ found, an adjustment disorder and attention deficit hyperactivity disorder.  (R. 11).

Based on her review of the evidence, the ALJ was convinced at step three of her analysis that the mental impairments cause Mr. Cougill moderate difficulties in concentration, persistence, or pace ("CPP") and moderate difficulties in social functioning.  But when she addressed Mr. Cougill's difficulties in the context of her RFC determination, she found his difficulties could be accommodated by restrictions to simple and repetitive work and to work involving no transactional interaction with the public.  The ALJ's hypothetical to the vocational expert matches her RFC determination.

When, at step five, an ALJ relies on the testimony of a vocational expert regarding jobs that fit particular functional abilities and provide a certain work environment, the claimant must of course actually have that functional capacity and the ability to function in the described environment.  *E.g., Jelinek v. Astrue,* 662 F.3d 805, 813 (7th Cir. 2011) ("We have stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity. . . .")  There must be some assurance that the VE's testimony regarding available jobs took into account all functional limitations stemming from mental impairments the ALJ has found or that are otherwise supported by the evidence. *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002). Otherwise, one cannot be assured that the VE's opinion includes only jobs that the claimant can perform.  *Id.* As explained in *Steele*:

> The reason for the rule [that hypothetical questions to the VE must include all limitations supported by the evidence] is to ensure that the vocational expert does not refer to jobs that the applicant cannot work

because the expert did not know the full range of the applicant's limitations.

*Id.*

The ALJ violated this principle in at least two ways.  First, she did not inform the VE about Mr. Cougill's education level, which is an integral factor in a step five decision.  *See* 20 C.F.R. § 416.960 (a step five finding that a claimant is not disabled must take into account the claimant's RFC and his vocational factors, including his education).  Although the ALJ asked the VE to consider Mr. Cougill's "vocational profile" (which refers to a person's work experience, age, and education, *id.*), the ALJ did not address Mr. Cougill's education in her hypothetical and his educational level was not apparent from the hearing testimony the VE presumably listened to.  Further, although the ALJ's decision categorizes Mr. Cougill as having a "limited education," that description is not supported by the evidence.  Under SSA regulations, a "limited education" is one reflective of reasoning, arithmetic, and language skills generally attained through "a 7th grade through the 11th grade level of formal education."  20 C.F.R. § 416.964.  It appears the ALJ relied on Mr. Cougill's work on his GED to support her characterization of Mr. Cougill having a limited education (as noted, she mentioned his GED work at least seven times in her decision),[1] but the ALJ's discussion of Mr. Cougill's GED work omitted—and it

---

[1]       She could not have reasonably relied on the fact Mr. Cougill graduated from high school with a certificate of completion.  A certificate of completion is not an academic credential but is a certificate given to intellectually or emotionally-challenged teenagers who completed their high school career and successfully worked toward their Individual Education Plan goals.  *See* Indiana Department of Education's description of the certificate of completion, at

appears deliberately so—material information that contradicts her finding of a limited education.

The record includes a report from Mr. Cougill's teacher in the GED program about his work in that program. It states that Mr. Cougill has been working three days a week on reading comprehension, math computation, and grammar rules, and that his "scores have remained within the same grade level range since he has been attending class." (R. 266). The ALJ acknowledged this report: her opinion recites that Mr. Cougill's teacher indicated his "scores have remained within the same grade level range since he started attending classes." (R. 19). The ALJ then omitted the *very next sentence* from the teacher's report about what that grade level range is. The very next sentence says: "His scores have varied from second to fifth grade in all areas but remain consistently in this area." (R. 266). A second to fifth grade education is *not* a limited education; it is a "marginal" education under SSA regulations, a distinctly different category describing an education "at a 6th grade level or less." 20 C.F.R. § 404.1564(b)(2). By failing to accurately inform the VE about Mr. Cougill's education level, and by failing to accurately describe the education level in her decision, the court cannot be sure that the jobs the VE said someone with Mr. Cougill's vocational profile can do are actually ones that fit his profile.

---

http://www.doe.in.gov/sites/default/files/student-assistance/certificates-and-diplomas-memo-spring-2014.pdf

Second, the ALJ omitted from her RFC, without any explanation, limitations on Mr. Cougill's social functioning abilities described by the state agency reviewer, whose opinion the ALJ stated she accorded great weight.  The state agency reviewer (Dr. Gange) wrote that Mr. Cougill's difficulties in social functioning prevent him from working in a setting involving "intense or frequent interactions with others," and checked boxes indicating Mr. Cougill is moderately limited in his ability to get along with coworkers without being distracted by them or exhibiting behavioral extremes and moderately limited in his ability to accept instructions or respond appropriately to criticism from supervisors.  (R. 249-250).  The ALJ said she was "according great weight to the State agency psychologists' opinion because it is well supported by medically acceptable clinical findings and laboratory diagnostic techniques . . . and [is] consistent with other substantial medical evidence of record."  (R. 21).  But the ALJ did not include any restrictions in her RFC (or in her hypothetical to the VE) with respect to Mr. Cougill's interactions with co-workers or supervisors. The RFC does not include any limitation on interactions with people other than the public, and the ALJ never explained why she rejected these portions of the psychologists' opinion.  Her failure to provide some explanation prevents the court from following the path of her reasoning; the court has no idea why she did not include in her RFC and the hypothetical to the VE any restrictions on interactions with co-workers or supervisors.

The ALJ also misstated another portion of the state agency psychologists' opinion.  Her decision reports Dr. Gange opined that Mr. Cougill would be able to

"gain and maintain employment in *any* work settings." (emphasis added). Dr.
Gange did not say that. He said Mr. Cougill would be able to "gain and maintain
employment in *amny* work settings." (R. 250). The most reasonable interpretation
of Dr. Gange's statement is that "amny work settings" meant "many work settings"
(a typographical error), and not "any work settings" (a grammatically incorrect
phrase). The difference between "any" and "many" can be a significant one. It may
be particularly significant in this case because Dr. Gange opined about the need for
limitations on Mr. Cougill's interactions with co-workers and supervisors, while the
ALJ ignored those limitations all together.[2]

  The above examples of material flaws in the ALJ's analysis prevent the court
from following the path of the ALJ's reasoning and from concluding that the VE's
jobs actually fit Mr. Cougill's functional capacity and vocational profile. These
errors require remand.

### III. Other Issues on Remand

  On remand, the ALJ should also more fully explain her reasoning that Mr.
Cougill's moderate difficulties in CPP are accommodated by simple and repetitive,
unskilled work, without transactional interaction with the public. The overall tenor
of her decision (and the evidence) indicates that Mr. Cougill's moderate difficulties

---

[2] Moreover, at the time of Dr. Gange's review of the administrative record, the
file did not contain, among other things, Mr. Cougill's GED teacher's test results
showing Mr. Cougill's reading and math skills were at the second to fifth grade level
and the opinion of Mr. Cougill's counselor at Meridian Services (based on significant
interaction with Mr. Cougill) regarding the seriousness of his concentration
difficulties.

in CPP stem from his borderline intellectual functioning and his ADHD.  The

Seventh Circuit has been clear that a limitation to unskilled work does not

necessarily exclude from a vocational expert's consideration jobs that a person with

moderate difficulties relating to CPP cannot perform.  There must be something in

the record suggesting a tie between a restriction to unskilled work and the source of

the claimant's CPP difficulties.  *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th

Cir. 2010).  The court has some trouble following the logic that a person whose

intellectual capacity and attention deficit impairments pose moderate difficulties in

CPP for purposes of evaluating the severity of impairment does not similarly

continue to suffer the same moderate difficulties, when they flow from apparent

innate characteristics, in the context of his work capacity.  Mr. Cougill seems

unlike, for example, a claimant possessing average intelligence whose deficits in

CPP are caused by stress or pain symptoms and for whom a simple, slow-paced, and

rote work setting may mitigate those CPP difficulties.  *E.g., O-Connor-Spinner,* 627

F.3d at 619 (noting that where a claimant's moderate difficulties in CPP stem from

anxiety or other stress, a hypothetical requiring low-stress work may sufficiently

account for the mental limitation).

In this case, there is evidence that Mr. Cougill's difficulties with CPP are

easily triggered, even by other people talking around him.  (R. 43).  This evidence

also highlights the ALJ's error in failing to address the limits on interactions with

co-workers and supervisors included by Dr. Gange in his opinion.  Further, the VE

testified that the unskilled jobs she discussed did not permit a person to be off task

even 10 percent of the work day on an ongoing basis.  (R. 60).  These matters deserve explanation on remand.

In summary, the Commissioner's step five decision lacks substantial evidentiary support because the ALJ did not accurately describe Mr. Cougill's educational profile, the RFC suffers from material flaws in logic, and it fails to account for evidence the ALJ purportedly otherwise accorded great weight.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the Commissioner's decision under sentence four.  Any objections to this Report and Recommendation must be filed in accordance with 28 § U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date:  August 26, 2016

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system